# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **IN RE:** | : | **CIVIL ACTION NOS. 18-CV-2201** |
| **THOMAS PICOZZI,** | : | **18-CV-2235** |
| **Plaintiff.** | : | **18-CV-2238** |
| | : | **18-CV-2239** |
| **FILED** | : | **18-CV-2277** |
| | : | **18-CV-2324** |
| JUL 1 2 2018 | : | **18-CV-2327** |
| KATE BARKMAN, Clerk | : | **18-CV-2532** |
| By_____Dep. Clerk | : | **18-CV-2616** |
| | : | **18-CV-2771** |

## MEMORANDUM

**MCHUGH, J.**                                                                 **JULY _12_ , 2018**

Plaintiff Thomas Picozzi, proceeding *pro se*, has filed fifteen (15) cases in this Court in

approximately a month and a half. After his first three cases were dismissed for lack of subject

matter jurisdiction, he began suing the Judges who dismissed these cases and Clerk's Office

staff. He appears to contend that the dismissal of his cases stems from a judicial conspiracy that

may involve the carpenter's union.

In a June 8, 2018 Order, Judge Kearney dismissed a group of Picozzi's cases and gave

him time to show cause as to why he should not be enjoined from filing cases *in forma pauperis*

in light of his abuse of that privilege. Rather than responding to Judge Kearney's Order, Picozzi

filed new cases, which were opened as Civil Action Nos. 18-2532 and 18-2616, and included

Judge Kearney as a Defendant. After his cases were reassigned to Judge Savage, Picozzi filed

yet another civil action, 18-2771, including Judge Savage as a Defendant. For the following

reasons, the Court will grant Picozzi leave to proceed *in forma pauperis* in his three most recent

cases, *Picozzi v. McKeown*, Civ. A. No. 18-2532, *Picozzi v. McCormack*, Civ. A. No. 18-2616,

1

and *Picozzi v. Brady*, Civ. A. No. 18-2771, and dismiss those cases. Because he has abused the *in forma pauperis* privilege by filing repeated groundless complaints at a rapid pace, the Court will also enjoin Picozzi from filing non-*habeas* civil cases *in forma pauperis*, unless they challenge conditions of confinement, for a period of two years.

## I.    FACTS AND PROCEDURAL HISTORY[1]

As noted above, Picozzi has filed fifteen (15) cases in this Court in approximately a month and a half. He initially filed cases that appeared to be loosely based on a will, alleged assaults and murder, medical issues, injuries to his genitals, alleged harassment, and allegations that he had fathered children with two women who have since been hiding the children from him. After Judges on this Court dismissed those cases, primarily on jurisdictional grounds, Picozzi began filing lawsuits against those Judges as well as Court staff. He also initiated a lawsuit based on his recent conviction for harassment, and a lawsuit based on a protection from abuse order that his ex-wife procured against him. After the dismissal of those cases, Picozzi initiated three cases that essentially rehash his claims against some of the same and some new Defendants, and suggest that Judges and Court staff are conspiring with those who have harmed him. As Picozzi's prior lawsuits underlie his claims, the Court will recount them here, in addition to recounting the allegations in his more recent lawsuits.

### A.    Picozzi's First Case: Civil Action Number 18-1998

Picozzi filed his first Complaint in this Court on May 11, 2018, which was docketed as *Picozzi v. McKeown*, Civ. A. No. 18-1998 (E.D. Pa.) and assigned to the Honorable Mitchell S. Goldberg. He named Joseph McKeown, Pat Mason, Kathleen Kacknacker, Ethel McKeown,

---

[1] The following facts are taken from Picozzi's pleadings and public dockets for other cases he previously filed in this Court including those underlying his claims in the instant cases.

and Harry McKucking as Defendants. Picozzi alleged that "when [he] was a young kid Joseph molested [him] for they been harassing [him] when [his] mom die[d]." (Civ. A. No. 18-1998, Compl. at 3.) He contended that the Defendants "made a will behind [his] back" and blocked his phone number from people. (*Id.*) Picozzi claimed that he "had to go to City Hall and get a will." (*Id.*) He also claimed that the Defendants "had this people in the medical field do stuff to [him and he] got stuff in [his] private part where [he] can't have sex!" (*Id.*) Picozzi argued that "Joseph came to hospital and did stuff this Dr. Snyder no [sic] him real well and his brother Murphy." (*Id.*) He also lost his house in Langhorne. (*Id.*) According to Picozzi, Murphy and his sister "tr[ied] to kill [him] at a wedding by drugging [him]." (*Id.*) He claimed that the Defendants' actions "screw[ed him] up" mentally. (*Id.* at 4.) As relief, he asked the Court to "put the guy behind bars." (*Id.*)

In a Memorandum and Order docketed May 16, 2018, Judge Goldberg granted Picozzi leave to proceed *in forma pauperis* and dismissed his Complaint without prejudice. Judge Goldberg observed that Picozzi had not stated a basis for a federal civil rights claim under 42 U.S.C. § 1983, as Picozzi had not sued state actors and lacked a judicially cognizable interest in the prosecution of others. To the extent Picozzi was asserting claims under state law, he had not stated a basis for diversity jurisdiction under 28 U.S.C. § 1332, as the Complaint did not provide any information about the parties' citizenship. Accordingly, Judge Goldberg gave Picozzi leave to amend in the event he could establish a basis for diversity jurisdiction. Picozzi did not file an amended complaint; instead, he filed a letter asking Judge Goldberg and Judge Kearney (who at that point had been assigned to subsequent cases filed by Picozzi) to call him before dismissing his cases or he will "report [them] to the U.S. Marshalls [sic]." (Civ. A. No. 18-1998, ECF No. 7.) By Order entered on June 26, 2018, Judge Savage, who was reassigned to the case after

3

Picozzi sued Judge Kearney, dismissed this action because of Picozzi's failure to file an amended complaint. (Civ. A. No. 18-1998, ECF No. 10.)

## B. Picozzi's Second Case: Civil Action Number 18-2032

Picozzi filed his second Complaint in this Court on May 15, 2018, which was docketed as *Picozzi v. Guy Peiagelee & Sons*, Civ. A. No. 18-2032 (E.D. Pa.) and assigned to the Honorable Cynthia M. Rufe. Picozzi named as Defendants Guy Peiagelee & Sons, Harry McKucking, Franny Laffy, Ed Coreyel, Ed Coreyel, Jr., Joseph Biccala and Son, Gerry Coganlen, Mike Jacab, Noll Orr, Bob Burns, and Rich Gannon. Picozzi alleged that Harry McKucking tried to kill him because he found out that McKucking had murdered his daughter. (Civ. A. No. 18-2032 Compl. at 3.) He contended that McKucking had Picozzi's ex-wife "drug [him] for years they killed [him he] came back." (*Id.*) Picozzi then heard "they [stole] over 150 million off of the state of PA convention." (*Id.*) Subsequently, "Carpenter top men where good friend with all the doctor they had [Picozzi] beat up put stuff in [his] private part [his] body where [he] can't have sex." (*Id.*) Guy Peiagalee and his son allegedly stole a grave site from Picozzi's family where "a little baby" was buried. (*Id.*) Franny Laffy "was [allegedly] involved in a murder of [Picozzi's] buddy Larry Sullivan," and she was also allegedly involved in what happened to Picozzi. (*Id.*) Picozzi contended that these events occurred in 2011. (*Id.*) With respect to injuries, Picozzi claimed that he "can't have sex can't pee [right] it all swelling up down there" and that he has "a sound in [his] head all day." (*Id.*) He asserts that he has called the carpenters' union 1,000 times and that it hasn't called him back. (*Id.*)

In a Memorandum and Order docketed on May 18, 2018, Judge Rufe granted Picozzi leave to proceed *in forma pauperis* and dismissed his Complaint. Judge Rufe explained that several of Picozzi's allegations rose to the level of delusional because they were based on

4

irrational or nonsensical thoughts. Judge Rufe also concluded that there was no basis for a federal claim and that, to the extent Picozzi was raising claims under state law, there was no basis for diversity jurisdiction under 28 U.S.C. § 1332. After concluding that amendment was futile, Judge Rufe dismissed the case with prejudice. Subsequent to the dismissal of his case, Picozzi filed various statements and exhibits, none of which show that the Court has jurisdiction over Picozzi's claims. Judge Rufe recently struck those documents and ordered the Clerk of Court to return them to Picozzi in light of the fact that the case had been closed.

## C.    Picozzi's Third Case: Civil Action Number 18-2033

At the same time Picozzi filed his Complaint in Civil Action Number 18-2032, Picozzi filed another Complaint that was docketed as *Picozzi v. McKeown*, Civ. A. No. 18-2033 (E.D. Pa.) and assigned to Judge Goldberg. In Civil Action Number 18-2033, Picozzi named Sue McKeown, Frank McKeown, Terry McKeown, Paddie Riley, and Francis Janson (identified in the caption as Frais Janson) as Defendants. Picozzi essentially alleged that he fathered children with Sue McKeown and Paddie Riley but that those women hid the children from him, and that some of the other Defendants affected his mind via the television. Exhibits attached to the Complaint indicated that Janson was an attorney who Picozzi contacted about his claims and reflected that other Defendants had asked Picozzi to stop contacting them or they would report him to the police, presumably for harassment.

In a Memorandum and Order docketed on May 21, 2018, Judge Goldberg granted Picozzi leave to proceed *in forma pauperis* and dismissed his Complaint with prejudice. As with Picozzi's Complaint in Civil Action Number 18-2032, Judge Goldberg concluded that some of Picozzi's allegations appeared delusional and that, to the extent he was raising state law claims, there was no basis for diversity jurisdiction. Picozzi was not given leave to amend based on

5

Judge Goldberg's conclusion that amendment would be futile. Nevertheless, he returned ten days later and filed assorted letters and documents in support of his claims.

## D.     Picozzi Sues Judge Goldberg and Judge Rufe: Civil Action Numbers 18-2201, 18-2238, and 18-2239

Apparently disappointed with Judge Goldberg and Judge Rufe's rulings in his cases, Picozzi initiated three lawsuits based on the dismissals of his Complaints, seeking to proceed *in forma pauperis* in each one. On May 25, 2018, Picozzi filed a Complaint against Judge Goldberg, *Picozzi v. Goldberg*, Civ. A. No. 18-2201 (E.D. Pa.), essentially claiming that Judge Goldberg violated his rights or otherwise wronged him by dismissing his Complaint in Civil Action Number 18-2033. Picozzi indicated that he would like Judge Goldberg to meet with him, call him, or write to him. Picozzi subsequently filed a "statement" in his case containing allegations about his attorney, his ex-wife, and a will. He attached the will as an exhibit.

On May 29, 2018, Picozzi filed two Complaints, the first of which was docketed as *Picozzi v. Goldberg*, Civ. A. No. 18-2238 (E.D. Pa.), and named Judge Goldberg as a Defendant along with Clerk of Court Kate Barkman, and two members of the Clerk's Office staff. The Complaint in Civil Action Number 18-2238 took issue with Judge Goldberg's dismissal of Picozzi's Complaint in Civil Action Number 18-1998, and indicated that Picozzi would like to "have a meeting" with the Judge. (Civ. A. No. 18-2238, Compl. ECF No. 2 at 6.) The Complaint did not raise any allegations against the other Defendants.

The second Complaint filed on May 29, 2018 was docketed as *Picozzi v. Ruff [sic]*, Civ. A. No. 18-2239 (E.D. Pa.), and named as Defendants Judge Rufe (incorrectly spelled Judge Ruff), two members of the Clerk's Office staff, and an individual named Leslie Szabo. The Complaint in Civil Action Number 18-2239 took issue with Judge Rufe's dismissal of Picozzi's

6

Complaint in Civil Action Number 18-2032. As with Civil Action Number 18-2238, it was not clear why Picozzi included the other individuals as Defendants.

### E.    Civil Action Number 18-2210

On May 25, 2018, the same date that Picozzi filed his first case against Judge Goldberg, Picozzi filed a new Complaint against Francis Gerard Janson, the attorney who had previously been included as a Defendant in Civil Action Number 18-2033. Picozzi's new Complaint was docketed as *Picozzi v. Janson*, Civ. A. No. 18-2210 (E.D. Pa.), and assigned to the Honorable C. Darnell Jones II. Picozzi alleged that he sought Janson's advice regarding his allegations of harassment and sexual assault, his allegations that women were hiding children from him, and in regard to a will. In a Memorandum and Order docketed on June 1, 2018, Judge Jones granted Picozzi leave to proceed *in forma pauperis*, construed his Complaint as raising legal malpractice claims, and dismissed the Complaint for lack of subject matter jurisdiction because the parties were not diverse. Picozzi was not given leave to file an amended complaint, but the dismissal of his claims was without prejudice to his assertion of any claims against Janson in state court.

### F.    Civil Action Number 18-2235

On the same day that Picozzi filed his second case against Judge Goldberg and his first case against Judge Rufe, he also filed a personal injury Complaint against nineteen defendants— Dr. Allen Snyder, Kimberly Groew, Dr. Stein, Khan Mohammad, Leslie Szabo, Lefton BPH Skewlec, Saul Miller, Bruce Sizer, Segal Aaronson, Sharon Picozzi (his ex-wife), "Boyfriend", Dr. Denisa Perice, Bill Clemens, D. Enpawo, Judy Stevenson, "Murphy", Mike Hand Brother, Frank Capano, and Phila D.M. Construction. The case was docketed as *Picozzi v. Snyder*, Civ. A. No. 18-2235 (E.D. Pa.), and assigned to Judge Jones.

7

Picozzi alleged that in August of 2015, he was admitted to the hospital for gastrointestinal bleeding. While in the hospital, he alleges that he "die[d] a few time[s]." (Civ. A. No. 18-2235, Compl. ECF No. 2 at 6.) Dr. Capano and Dr. Perice "had 10 IV in [him]" and a blonde nurse put a tube in his mouth and poured liquid down his throat so that he would not die. (*Id.*) Picozzi stated that Dr. Snyder informed him that he would be on oxygen and would walk with a walker for the rest of his life. Picozzi "then ... found out they put something in [his] prevent [sic] parts" and alleged that Dr. Snyder knew about "something in [his] air way." (*Id.*) After Picozzi was released from the hospital, "this guy Murphy & Jim and Brain [sic] Donahue tr[ied] to beat [him] up 3 time[s]." (*Id.*) He also alleged that he was beat up at an Alcoholics Anonymous meeting and filed a police report to that effect. The Complaint suggested that Picozzi returned to the hospital and was told he had heart failure. Picozzi alleged that he hears noises, cannot have sex because his "penis won't get hard," cannot urinate correctly, and has difficulty breathing. (*Id.* at 7.) Picozzi sought to proceed *in forma pauperis*, but it was not clear what relief, if any, he sought from the Court.

### G. Civil Action Number 18-2277

On May 31, 2018, Picozzi filed a new personal injury Complaint naming three Defendants—Allen Robert Snyder, William J. Benz, and Officer Brown—which was docketed as *Picozzi v. Snyder*, Civ. A. No. 18-2277 (E.D. Pa.) and assigned to the Honorable Gene E.K. Pratter. The case was essentially based on a charge filed against Picozzi for harassing Dr. Snyder. Picozzi alleged that he received "a non-traffic citation summons . . . for calling Dr. Allen Robert Snyder for help." (Civ. A. No. 18-2277, Compl. ECF No. 2 at 6.) Picozzi contended that he was only calling the Doctor for help and believes that the Doctor "put something in [his] air way and something in [his] privet [sic] parts." (*Id.*)

8

Picozzi contended that Officer Brown interviewed him for his "side of they [sic] story." (*Id.* at 10.) It appears that Officer Brown filed the harassment charge against Picozzi. Picozzi, however, alleges that he does not think Dr. Snyder should have pursued the charge.

A review of public dockets reflects that on April 26, 2018, Picozzi was charged in Bucks County with one count of "Harassment – Course of Conduct W/No Legitimate Purpose." *Commonwealth v. Picozzi*, Docket No. MJ-07201-NT-0000075-2018. The docket reflected that on May 23, 2018, Magistrate Judge William J. Benz found Picozzi guilty of harassing Dr. Snyder. According to the Complaint, Picozzi attended a hearing (presumably the summary trial) and told Judge Benz what Dr. Snyder allegedly did and also informed him that "this guy murphy from Aria Hospital had me beat up in [an] A.A. meeting." (Civ. A. No. 18-2277, Compl. ECF No. 2 at 6.) He also apparently informed the Judge that his private parts were swelling. Despite his testimony, Picozzi was "found . . . guilty of phone harassment." (*Id.*)

Picozzi's Complaint and attachments also referenced the carpenters' union, suggested that the union is involved with the hospital, discussed various individuals and events including an incident related to a casino, and mentioned a divorce, but it was not clear how any of those allegations related to Picozzi's claims against Dr. Snyder, Judge Benz, or Officer Brown. Again, Picozzi sought to proceed *in forma pauperis* but it was not clear what relief he sought from the Court.

**H. Picozzi Sues Judge Jones and Judge Pratter: Civil Action Number 18-2324**

On June 4, 2018, Picozzi filed a new Complaint naming the four Judges who had been assigned cases he filed in this Court- Judge Goldberg, Judge Rufe (incorrectly spelled Judge Ruff), Judge Jones, and Judge Pratter—as well as an employee of the Clerk's Office. The Complaint appeared to be predicated entirely on Picozzi's dissatisfaction with Judge Jones's

dismissal of his Complaint in Civil Action Number 18-2210. Picozzi listed reasons why he believes the dismissal was improper and also appeared to reference allegations that were contained in complaints that were not before Judge Jones. Picozzi sought leave to proceed *in forma pauperis* but did not request any particular relief from the Court.

### I.    Civil Action Number 18-2327

On the same day Picozzi filed Civil Action Number 18-2324, Picozzi also filed a Complaint against nine defendants, *i.e.*, Robert L. Katzenstein (a divorce attorney), Judge Frge, Picozzi's ex-wife Sharon, Linda C. Frederick, Steve Tomas (an employee of this Court's Clerk's Office), Officer Mark Werth, Middle Town Police, "Mary from Medicare," and Mr. Romaciki (identified as a "prison Guard in court room"). As with all of his other cases, Picozzi sought to proceed *in forma pauperis*. Picozzi's claims appeared to be predicated primarily on a motion for a protection from abuse order that his ex-wife filed against him in the family division of the Bucks County Court of Common Pleas, and related proceedings. However, as with his other Complaints, Picozzi diverged into allegations that did not relate to the parties sued.

Katzenstein apparently asked if Picozzi would like him to serve as his attorney, presumably in connection with a hearing related to his ex-wife's petition. During their discussion, Picozzi "told him what happen[ed] to [him] up here in Doylestown went to Buck [sic] county for two days for nothing" and adds that he thinks "they were trying to put [him] in prison." (Civ. A. No. 18-2327, Compl. ECF No. 2 at 3.) It was not clear to whom "they" refers. Picozzi attended a hearing in court on April 11, 2018. During the hearing "[t]he judge keep say a buddy of [his] dad's name[d] Mr. Sullivan said it lik[e] 4 or 5 time[s] like he worked there" and Katzenstein said "derogatory things" to Picozzi. (*Id.*) Picozzi alleged that he "[kept] [his] mouth shut" because he "wasn't sure what was going on." (*Id.*) He contended that he experienced a

10

mental breakdown from the "harassment" he experienced. (*Id.* at 4.) It appeared that Judge Frge presided over the hearing and issued Picozzi's ex-wife a protection from abuse order against Picozzi.

In an attachment to the Complaint, Picozzi suggested that there was a link between the deaths of two of his friends, and suggested that third-parties--including Harry McKucking and members of the McKeown family whom he has sued in other cases- -were behind the protection from abuse order, the deaths, and/or other bad things that are happening to him. Picozzi also believes that his ex-wife "lied on the abuse order." (*Id.*, ECF No. 2-1 at 1.) He again referenced the carpenters' union and alleged abuses at the convention center, and questioned whether "some people in city hall" were involved in that corruption. He appeared to believe that his ex-wife tried to kill him and had members of the carpenters' union come to his house "looking at stuff in [his] garage it was on this T.V. stuff." (*Id.* at 3.) The rest of his allegations are rambling and suggest that Picozzi is pursuing a conspiracy theory. Picozzi also attached various documents to his Complaint, most of which related to the protection from abuse order sought by his ex-wife, and the rest of which did not clarify the basis for additional claims.

## J. Judge Kearney Dismisses Seven of Picozzi's Cases

Civil Action Numbers 18-2201, 18-2235, 18-2238, 18-2239, 18-2277, 18-2324, and 18-2327 were all assigned to the Honorable Mark A. Kearney. In a June 8, 2018 Memorandum and Order, Judge Kearney granted Picozzi leave to proceed *in forma pauperis* in his cases and dismissed them all after screening them pursuant to 28 U.S.C. § 1915(e)(2)(B). Judge Kearney dismissed all of Picozzi's claims against Judges Goldberg, Rufe, Jones, and Pratter because those Defendants were all entitled to absolute judicial immunity from Picozzi's claims, which were based on the manner in which they handled his lawsuits. Judge Kearney likewise dismissed all

11

of Picozzi's claims against Court staff because Picozzi failed to allege any facts supporting a claim against them and, to the extent they were sued based on their roles in handling his cases, they were entitled to quasi-judicial immunity.

Turning to Civil Action Number 18-2235, Judge Kearney construed the Complaint as raising medical malpractice claims. However, as in many of his prior cases, Picozzi had not pled a basis for the Court's jurisdiction over those state law claims. In any event, it appeared that the parties were not diverse, so Judge Kearney dismissed the case for lack of subject matter jurisdiction.

Judge Kearney next addressed Civil Action Number 18-2277, which primarily asserted claims based on Picozzi's prosecution for harassing Dr. Snyder. Judge Kearney construed the Complaint as raising claims pursuant to 42 U.S.C. § 1983; he dismissed claims against a state judge as barred by absolute judicial immunity, and dismissed claims against a police officer due to Picozzi's failure to plead a sufficient factual basis for a constitutional claim against the officer. In any event, any malicious prosecution claims were not cognizable because Picozzi's underlying conviction remained intact. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). Picozzi also failed to provide a basis for a claim against Dr. Snyder because Dr. Snyder is not a state actor subject to liability under § 1983 and the Court lacked jurisdiction over any state law claims against him.

Judge Kearney then turned to Civil Action Number 18-2327, which he construed as raising claims pursuant to § 1983 based on the protection from abuse order that Picozzi's ex-wife sought against him in state court. Judge Kearney observed that Picozzi failed to allege what most of the named Defendants did so as to be liable to him and, accordingly, failed to state a claim against those Defendants. Picozzi's claims against the state judge who issued the order

12

were barred by absolute judicial immunity. Furthermore, Picozzi's ex-wife and her attorney were not state actors subject to liability under § 1983 and, as with Picozzi's many other state law claims, there was no basis for diversity jurisdiction.

Judge Kearney concluded that "[a]fter careful review of [Picozzi's] rambling and often disturbing complaints in a frenzied filing over three weeks, we must find Mr. Picozzi has abused the privilege of proceeding *in forma pauperis*." *In re: Picozzi*, No. 18-CV-2201, 2018 WL 2768879, at *8 (E.D. Pa. June 8, 2018). Accordingly, Judge Kearney gave Picozzi until June 18, 2018 "to show cause why he should not be enjoined from filing any more civil non-*habeas* cases in this Court without prepayment of the filing fee and administrative fee." *Id.*

### K. Picozzi's Twelfth Case: Civil Action Number 18-2439

On June 11, 2018, Picozzi filed a Complaint against Mr. Jeff Murry, John Bellatyne, Douglas J. McCarron, David Haines, William Banfield, Robert Weakley, Lisa Husband from Briagadome Farm, Jim Iquito, Coleen Iquito, Robert Naughton, Marc L. Gelman, Jennings Sigmond, and Thomas McGoldrick, as well as a Motion to Proceed *In Forma Pauperis*. *See Picozzi v. Murry*, Civ. A. No. 18-2439 (E.D. Pa.). The Complaint alleged that Picozzi "would like to bring to the attention of the Phila. courts in case 18-2032[[2]] . . . that there [might] be more defendants involve[d] in the case from another district in the carpenter union Local 277 of New York." (Civ. A. No. 18-2439, Compl. at 6.) The remainder of the Complaint contained allegations similar to those in Picozzi's other filings, which are often rambling and disjointed, and concern people who have allegedly caused him harm and a possible conspiracy related to the carpenter's union.

---

[2] As noted above, Civil Action No. 18-2032 was assigned to Judge Rufe, who dismissed Picozzi's Complaint in that matter without leave to amend. *See Picozzi v. Guy Peiagelee & Sons*, No. 18-CV-2032, 2018 WL 2293939 (E.D. Pa. May 17, 2018).

13

Judge Kearney granted Picozzi leave to proceed *in forma pauperis* and concluded that there was no basis for subject matter jurisdiction over Picozzi's Complaint, which appeared to raise tort claims under Pennsylvania law. Judge Kearney also observed that Picozzi failed to allege a basis for federal question jurisdiction and that he could not state a constitutional claim based on any alleged failure to investigate or prosecute individuals or entities that may have caused him harm. Picozzi was also reminded that he was obligated to respond to Judge Kearney's show cause order as to why he should not be enjoined from further filing *in forma pauperis*.

## L. Picozzi Files Three New Cases Against Judicial Defendants and Others

On June 18, 2018, Picozzi filed a new civil action in which he seeks to proceed *in forma pauperis*, which was docketed as *Picozzi v. McKeown*, Civ. A. No. 18-2532 (E.D. Pa.). Picozzi named thirty (30) Defendants, among them Judges Goldberg, Rufe, Jones, Pratter, and Kearney, as well as Chief Judge Lawrence F. Stengel and Clerk of Court Kate Barkman. He also named the following individuals, some of whom have been named as Defendants in other filings and some of whom are new: Rev. Williams McKeown, Dr. Brendin Greer, Gary Martin, Sandy McKuckin, Jim Gannon, John Curci, Joseph Notinghan & Sr., Steve Young, Rev. Father Kurvara, Jack Boderford, Elizabeth Morales-Rosa, Charles Ericakason, Joseph Orka, Allen Bigalow, Monsignor of Our Lady Grace, Kohler & Associates, Jack (Owner of Pen Jersey), Ronnie Franise Carpent, John Masington, Shamass Boyle Jr., and Samie Boccella. Picozzi indicates that the events giving rise to his claims took place over nearly two decades, between 1999 and 2018.

In his Complaint in Civil Action Number 18-2532, Picozzi seeks to "bring the attention of the phila courts" that there "mite [sic] be more defendant[s] [involved] in the cases that were

14

going to the phila. courts at 601 Market Street." (Civ. A. No. 18-2532, Compl. at 7.) He surmises that "it [is] kind of odd how every case [of his] was dismiss[ed] with prejudice" and argues that the Judges who have presided over his cases may be "involved with the [other] defendant[s]." (*Id.*) Once again, the remainder of the Complaint contains disjointed allegations similar to those in Picozzi's other filings; they concern people who have allegedly caused him harm, people who might have information about others who caused him harm or who are associated with individuals who caused him harm, and a possible conspiracy related to the carpenters' union and a casino. Picozzi does not specify what relief he seeks but indicates that if Judges or Court staff are "invole [sic] with the defendant[s]" then "they should come out and tell the phila. courts what they know about the cases." (*Id.*)

On June 21, 2018, Picozzi filed his fourteenth civil action in which he seeks to proceed *in forma pauperis*, which was docketed as *Picozzi v. McCormack*, Civ. A. No. 18-2616 (E.D. Pa.). Picozzi named three (3) Defendants: Dan McCormack and Steve Tomas, who are employees of this Court's Clerk's Office, as well as Mary Finn, Picozzi's godmother. Picozzi again indicates that, again, he would "like to bring to the attention to the phila. courts in case 18-2032 that there mite [sic] be more defendant[s] in the cases [that] work for the phila. PA. courts." (Civ. A. No. 18-2616, Compl. at 3.) Picozzi alleges that "every time [he] drop[s] a complaint off [at the Court, McCormack and Tomas] act funny." (*Id.*) According to Picozzi, on one occasion, he wanted to "ask Mr. McCormack some question [and] he ran away and [hid]." (*Id.*) He also alleges that Tomas gave him a different form on another occasion. (*Id.* at 6.) Picozzi further vaguely alleges that Mary Finn "know[s] some of these people [and might] be involve[d] with the money being exchange[d]." (*Id.*) As with some of his other cases, Picozzi suggests that his new case is somehow related to Civil Action Number 18-2032 and his belief that the carpenter's

15

union is involved in a conspiracy against him. He does not specify any injuries or relief sought from the Court.

On June 26, 2018, Picozzi's active cases were reassigned from Judge Kearney to Judge Savage. That day, Judge Savage dismissed Civil Action Number 18-1998, due to Picozzi's failure to file an amended complaint in that case, as noted above. On July 2, 2018, Picozzi filed his fifteenth *in forma pauperis* action, which was docketed as *Picozzi v. Brady*, Civ. A. No. 18-2771 (E.D. Pa.). Picozzi named as Defendants Congressman Robert Brady, Dennis Devene, Harry McKeown, Steve Sterlane, Adrine Melairie, Mr. McMenamin, Jay Jackson, Bruce ("think marry to miss McKeown sister"), Judge Savage, and Marc L. Gelman.

As with his most recent filings, Picozzi again alleges that he would "like to bring to the Phila. courts attention there mite [sic] be more defendants in case: 18-2032." (Civ. A. No. 18-2771 Compl. at 8.) His allegations are again disjointed and rambling, and concern people who have allegedly caused him harm as well as the possible conspiracy regarding the carpenters' union. It appears that Picozzi has named Judge Savage as a Defendant because several of Picozzi's cases were assigned to him and perhaps because Judge Savage dismissed Civil Action Number 18-1998. Specifically, Picozzi states that Judge Savage "must tell the Phila. courts what he know[s] about each case[]" and asks whether Judge Savage is related to an Eddy Savage. (Compl. at 17.)

## M. Picozzi's Cases are Reassigned

As Picozzi has now sued the six other Judges assigned to his cases and the Chief Judge, his pending cases were reassigned to the undersigned. At this juncture, the Court must address Civil Action Numbers 18-2532, 18-2616, and 18-2771, as well as the matter of whether Picozzi should be enjoined from further filings in light of his litigation behavior.

16

## II.    STANDARD OF REVIEW

The Court grants Picozzi leave to proceed *in forma pauperis* in Civil Action Nos. 18-
2532, 18-2616, and 18-2771, because it appears that he is not capable of paying the fees to
commence these actions. Accordingly, the Court is required to screen his Complaints under 28
U.S.C. § 1915(e)(2)(B), which requires the Court to dismiss Picozzi's Complaints if, among
other things, they are frivolous or fail to state a claim. A complaint is frivolous if it "lacks an
arguable basis either in law or in fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), and is
legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch v. United
States*, 67 F.3d 1080, 1085 (3d Cir. 1995).

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the
same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6),
*see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to
determine whether the complaint contains "sufficient factual matter, accepted as true, to state a
claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)
(quotations omitted). Conclusory statements and naked assertions will not suffice. *Id.*
Moreover, "if the court determines at any time that it lacks subject-matter jurisdiction, the court
must dismiss the action." Fed. R. Civ. P. 12(h)(3). As Picozzi is proceeding *pro se*, the Court
construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

Moreover, Rule 8(a) of the Federal Rules of Civil Procedure requires a complaint to
contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A
district court may *sua sponte* dismiss a complaint that does not comply with Rule 8 if "the
complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if
any, is well disguised." *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (quotations omitted).

17

This Court has noted that Rule 8 "requires that pleadings provide enough information to put a defendant on sufficient notice to prepare their defense and also ensure that the Court is sufficiently informed to determine the issue." *Fabian v. St. Mary's Med. Ctr.*, No. Civ. A. 16-4741, 2017 WL 3494219, at \*3 (E.D. Pa. Aug. 11, 2017) (quotations omitted).

## III.   DISCUSSION

### A.   Civil Action Nos. 18-2532, 18-2616, and 18-2771

#### 1.   Conspiracy Claims

The theme running through Picozzi's most recently filed cases appears to be that the Judges assigned to his cases, the Chief Judge of this Court, and Clerk's Office staff, have conspired with the carpenter's union and/or other individuals who have caused Picozzi harm. That theory appears to be predicated on Picozzi's unhappiness with the dismissal of his cases and his translation of that dissatisfaction into a conclusion that the basis for those dismissals is an association or conspiracy with third parties, rather than the reasons set forth in the memoranda and orders explaining the reasons for dismissal. The Court will liberally construe those claims as conspiracy claims pursuant to *Bivens v. Six Unknown Named Agents of the FBI*, 403 U.S. 388 (1971).

"[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co.*, 615 F.3d at 178. "[A] bare assertion of conspiracy will not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). To state a claim for a judicial conspiracy, a complaint should allege facts concerning "the approximate time when the [conspiratorial] agreement was made, the specific parties to the agreement (i.e., which judges), the period of the conspiracy, [and] the object of the conspiracy." *Great W. Mining & Mineral Co.*, 615 F.3d at 179.

18

Here, Picozzi has not alleged any specific basis for the claimed conspiracy. Instead, he appears to be basis his claims on speculation and an irrational conclusion that his losses in Court must somehow be related to the carpenter's union or his struggles with third parties over the course of several decades. Those allegations do not state a plausible basis for a conspiracy claim and rise to the level of factually frivolous.[3]

## 2. Judicial Immunity

The Court understands Picozzi to be pursuing claims against Judges Goldberg, Rufe, Jones, Pratter, Kearney, and Savage based upon their dismissal of his previous cases and, in some cases, their assignment to his cases. The basis for his claims against Chief Judge Stengel is unclear, although Picozzi is presumably basing his claims upon the Chief Judge's reassignment of Picozzi's cases to the other judges. As Picozzi does not specify the legal basis for his claims, the Court construes them as claims for violations of his constitutional rights pursuant to *Bivens*.

Judges are entitled to absolute immunity from civil rights claims based on acts or omissions taken in their judicial capacity, so long as they do not act in the complete absence of all jurisdiction. *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Soto v. Sleet*, 458 F. App'x 89, 90 (3d Cir. 2012) (per curiam) (concluding that federal judge was entitled to immunity because "[t]he allegations in Soto's complaint relate to action or inaction taken by the District Court in his capacity as a judge"); *Harvey v. Loftus*, 505 F. App'x 87, 90 (3d Cir. 2012) (per curiam) (same). "Judicial immunity attaches even if the act was done in furtherance of a conspiracy." *Harvey*, 505 F. App'x at 90 (citing *Dennis v. Sparks*, 449 U.S. 24, 26-27 (1980)).

---

[3] In the event the Complaints in Civil Action Numbers 18-2532, 18-2616, and 18-2771 can be construed to raise *Bivens* claims against the other individuals identified as Defendants based on having conspired with federal judges or Clerk's Office staff, those claims fail for the same reasons as Picozzi's conspiracy claims fail. *See Abulkhair v. Google LLC*, --- F. App'x ---, No. 18-1584, 2018 WL 3038437, at *1 n.2 (3d Cir. June 19, 2018).

Here, Picozzi's claims against Judges Goldberg, Rufe, Jones, Pratter, Kearney, and Savage are all based on the manner in which those Judges handled his civil lawsuits or because they have been assignment to his cases. His claims against Chief Judge Stengel are presumably based on Chief Judge Stengel's reassignment of his cases. As Picozzi sued all of those Judges for acts or omissions taken in their judicial capacity, judicial immunity clearly applies and there is no legal basis for any of Picozzi's lawsuits against those Judges.[4]

Picozzi has again named Clerk of Court Kate Barkman and Clerk's Office employees Dan McCormack and Steve Tomas as Defendants in these matters. Presumably, Picozzi has named the Clerk of Court because of her role in signing the Orders directing reassignment of his cases at the direction of Chief Judge Stengel. Picozzi has named McCormack and Tomas as Defendants based on their roles in handling his cases as Court staff. All three of these Defendants are therefore entitled to quasi-judicial immunity. *See Gallas v. Supreme Ct. of Pennsylvania*, 211 F.3d 760, 769 (3d Cir. 2000). Furthermore, even if Clerk's Office staff acted "funny" in addressing Picozzi, neither those allegations nor any of his other allegations against Court staff suggest a conspiracy or support a plausible basis for a constitutional violation.

### 3. Lack of Diversity Jurisdiction

With respect to the remaining Defendants, Picozzi's allegations suggest that he is primarily trying to raise state law tort claims against them.[5] As an initial matter, with respect to Mary Finn, the third Defendant in Civil Action No. 18-2616, Picozzi has failed to raise any clear

---

[4] The reassignment of cases is an act taken within the Chief Judge's judicial capacity. *Cf. Gochin v. Haaz*, No. CV 16-5359, 2017 WL 4475973, at *6 (E.D. Pa. May 10, 2017) ("Reassignment of cases is an action within the President Judge's judicial capacity."), *aff'd*, 724 F. App'x 155 (3d Cir. 2018); *see also* 28 U.S.C. § 137.

[5] The Court cannot discern any non-frivolous basis for a federal claim.

20

allegations stating what Finn has done or why she is liable to him. Accordingly, he has failed to state a claim against her.

In any event, the only independent basis for the Court's jurisdiction over Picozzi's state law tort claims against the remaining Defendants is pursuant to 28 U.S.C. § 1332(a), which grants a district court jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."[6] Diversity jurisdiction requires "complete diversity," which in turn requires that "no plaintiff be a citizen of the same state as any defendant." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010). Picozzi's Complaints in Civil Action No. 18-2532, 18-2616, and 18-2771 indicate that Picozzi and at least some of the Defendants are citizens of Pennsylvania. Accordingly, the Court will dismiss Picozzi's claims against these Defendants without prejudice for lack of subject matter jurisdiction.

## B. Pre-Filing Injunction

As explained above, by Order entered on June 8, 2018, Judge Kearney directed that Picozzi show cause on or before June 18, 2018 as to why the Court should not enjoin him from filing "any future civil non-*habeas* cases which he seeks to pursue in this Court to be subject to . . . pre-filing review before granting the privilege of proceeding *in forma pauperis.*" Judge Kearney explained that absent a response, the Court "may enjoin Mr. Picozzi's future *in forma pauperis* in this Court without further notice."

A district court may enjoin "abusive, groundless and vexatious conduct" pursuant to 28 U.S.C. § 1651(a), the All Writs Act. *Brow v. Farrelly*, 994 F.2d 1027, 1038 (3d Cir. 1993). However, this "broad scope of . . . power . . . is limited by two fundamental tenets of our legal

---

[6] The exercise of supplemental jurisdiction would be inappropriate here.

system-the litigant's due process and access to the courts." *Id.* "There are three requirements that must be met before a court may issue such an injunction: '(1) the litigant must be continually abusing the judicial process; (2) the litigant must be given notice of the potential injunction and an opportunity to oppose the court's order; and (3) the injunction must be narrowly tailored to fit the specific circumstances of the case.'" *Holman v. Hooten*, No. 11-78, 2015 WL 3798473, at \*7 (E.D. Pa. June 17, 2015) (quoting *Grossberger v. Ruane*, 535 F. App'x 84, 86 (3d Cir. 2013)); *see also Abdul-Akbar v. Watson*, 901 F.2d 329, 332 (3d Cir. 1990) (noting that a pre-filing injunction is "an extreme remedy that must be narrowly tailored and sparingly used"). While "*pro se* litigants are not entitled to special treatment," *Brown v. City of Phila.*, Nos. 05-4160, 06-2496, 06-5408, 08-3369, 2009 WL 1011966, at \*15 (E.D. Pa. Apr. 14, 2009), the use of a pre-filing injunction against a *pro se* litigant "must be approached with caution." *Grossberger*, 535 F. App'x at 86 (citing *In re Oliver*, 682 F.2d 443, 445 (3d Cir. 1982)).

Here a pre-filing injunction is necessary. As noted above, Picozzi has filed fifteen (15) *in forma pauperis* cases in this Court in less than two months. After his first few cases were dismissed for lack of subject matter jurisdiction, he began suing Judges on this Court for dismissing his Complaints as well as Clerk's Office staff. Picozzi has also sued the Chief Judge and Clerk of Court over the reassignment of his cases. None of his cases have set forth a plausible claim for relief over which this Court may exercise jurisdiction. Furthermore, if the Court understands Picozzi correctly, he appears to be primarily fixated on a vast conspiracy theory— which has no basis in fact—involving the Judges, Court staff, the carpenters union, and others who have done him harm in various ways. Picozzi's behavior demonstrates that he will continue to file similar lawsuits on a rapid basis, continually adding more defendants as possible participants in the alleged conspiracy, and that any time he receives an unfavorable ruling from a

22

Judge, he will name that Judge as a defendant in a new case. In less than two months, he has already sued seven of the eighteen active judges on this Court. Considering this pattern, and the pace at which Picozzi has filed cases, the Court concludes that Picozzi has "continually abus[ed] the judicial process." *Holman*, 2015 WL 3798473, at \*7 (quoting *Grossberger*, 535 F. App'x at 86). Indeed, considerable judicial resources have been spent by the Court and Court staff addressing the constant reassignment and disposition of Picozzi's cases.

Moreover, Judge Kearney's June 8, 2018 Order directed Picozzi to show cause as to why he should not be enjoined from filing cases *in forma pauperis* in light of his abuse of that privilege. Rather than respond, Picozzi filed new cases (Civil Action Nos. 18-2532 and 18-2616) and included Judge Kearney as a Defendant. Picozzi also filed Civil Action No. 18-2771 naming Judge Savage as a Defendant. Thus, the Court provided Picozzi with the requisite opportunity to oppose the imposition of a pre-filing injunction, satisfying the second prong of *Grossberger*.

Having satisfied the requirements for issuing a pre-filing injunction, the Court must fashion a narrowly tailored injunction. The Court considered limiting the injunction to the Defendants already sued by Picozzi or to the subject matter raised in his previously-filed lawsuits. However, the list of individuals who have apparently harmed Picozzi is vast and the incidents of which Picozzi complains are numerous, span over almost two decades (at least), and cannot be clearly confined to a type of subject matter. He has named as defendants federal judges, state judges, his ex-wife, attorneys, a congressman, family members of his ex-wife, individuals who have allegedly assaulted him, individuals whom he claims are associated with the carpenter's union, individuals with whom he may have fathered children, and individuals associated with other defendants or who may or may not know something about the matters

23

troubling Picozzi. There is no apparent limiting principle—e.g., a limit on defendants, subject matter, case number, or time frame- -that would prevent Picozzi's litigious behavior because, as his recent complaints suggest, the possible list of defendants associated with those who have done in harm or who may be involved in a conspiracy against him continues to expand. Accordingly, the Court does not believe such an injunction would be sufficient to curb Picozzi's behavior.

The Court will nevertheless enjoin Picozzi from filing new civil cases *in forma pauperis* with the exception of any *habeas* cases or, should he end up incarcerated, cases challenging the conditions of his confinement. Picozzi will also be prevented from filing any documents or motions in the cases he has already filed, with the exception of a notice of appeal or a motion for reconsideration of the Order accompanying this Memorandum. As the Court could not discern a limiting principle based on subject matter or named defendants, the Court will impose a temporal limitation and direct that the injunction last for two years from the date of this Memorandum and Order. Picozzi is on notice, however, that if he repeats the same pattern of abusive, litigious behavior after the injunction expires, he may be subject to another injunction.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Picozzi leave to proceed *in forma pauperis* and dismiss Picozzi's Complaints in Civil Action Nos. 18-2532, 18-2616, and 18-2771. Picozzi will not be given leave to amend because amendment would be futile. The Court will subject Picozzi to a prefiling injunction as set forth in the following Order.

**BY THE COURT:**

**GERALD A. MCHUGH, J.**

24